JUDE G. GRAVOIS, Judge.
| jjDefendant/appellant, Davie Shoring, Inc. (“Davie”) appeals a summary judgment granted in favor of plaintiff-in-recon-vention, the East Jefferson Levee District (“the Levee District”),[1] finding that Davie violated La! R.S. 38:213 by not securing a permit to drive a house-moving trailer carrying a wood-framed house, and other heavy equipment, across the Lake Pontch *926 artrain levee to the shore of the lake near the Bucktown Marina in Jefferson Parish, and awarding costs and expenses to the Levee District in the amount of $36,854.07, pursuant to La. R.S. 38:213(B). For the reasons that follow, we reverse the trial court’s grant of summary judgment in favor of the Levee District and remand the matter for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

On February 13, 2011, Davie moved a small wood-framed house from a location in Jefferson Parish to the shore of Lake Pontchartrain in Bucktown, near |athe Bucktown Marina, to await transportation across Lake Pontchartrain on a barge. The house, which measured approximately 24 feet by 50 feet, was loaded onto a trailer for that purpose and was driven by Davie employees across the Lake Pontchartrain levee on a two-lane paved public road that crosses the levee near the Marina and the United States Coast Guard Station in Bucktown. A second trailer with equipment and a “Bobcat” were also driven across the levee at said location at the same time.[2] After crossing the levee, the trailers were parked near the shoreline of Lake Pontchartrain, approximately 500 feet from the toe of the levee. According to the record, this land was owned by the State of Louisiana and was leased to Jefferson Parish for public use as the Buck-town Marina recreational development. It is undisputed, that the trailers were not parked within the levee right-of-way.
On February 18, 2011, the Parish of Jefferson (“the Parish”) filed a Petition for Mandatory Injunction and for Expedited Hearing against Davie, alleging that the trailers had been discovered five days earlier at the above-described location, and were parked there without permission from either the State or the Parish. The petition claimed that the Parish had requested that Davie move the trailers, to no avail. The Parish sought either a mandatory injunction requiring Davie to immediately remove the trailers and repair any damage caused to the property thereby, or alternatively, allowing it to demolish the house and remove the trailers at Davie’s expense, plus any and all attorney’s fees and costs of bringing the action.
Davie answered the petition on March 1, 2011, admitting ownership of the trailers, and that the trailers were parked on public leasehold property at the RBucktown Marina as described in the petition. Davie also admitted that it had moved the trailers over the public streets and public areas to arrive at this location, but was stopped from proceeding by the Levee District. Davie further claimed that it was ready, willing, and able to move the trailers as requested by the Parish, but for threats of arrest made by.the Levee District and its imposition of additional requirements, namely that the Levee District required Davie to secure a permit to recross the levee in order to remove the house and trailers from said location. Davie noted that the paved blacktopped road over the levee off of Old Hammond Highway contained no warning signs or other indications that the area was not for. public use or that any special permits were required to enter the area. Nonetheless, Davie indicated in its answer that it was working diligently with the Levee District to secure, the required permit to cross the levee again on this blacktopped road.
*927 Davie also filed, in the same pleading, a third-party demand against the Levee District, alleging that the Levee District had exceeded its jurisdiction by threatening its arrest powers against Davie, because the trailers were parked on property not owned or controlled by the Levee District and were at least 500 feet from the toe of the levee. Davie alleged that the Levee District threatened to arrest the engineers and inspectors employed by Davie to inspect the house in order to render reports needed to complete the permit application process, thus thwarting Davie’s efforts to comply with the Levee District’s requirement of securing a permit to move the trailers. Davie also alleged that the Levee District had demanded a construction permit even though by its own written application procedures, a permit is required only where construction involves the subsurface within 300 feet of the hurricane protection levees, whereas the trailers here were parked more than 500 feet from the levee. Davie asked the court to order the Levee District to allow Davie to proceed as necessary to remove the trailers from |fithe Parish’s property and for damages and all equitable relief caused by the Levee District’s unlawful conduct.
The Levee District filed an answer, exceptions, affirmative defenses, and a recon-ventional demand against Davie. In its affirmative defenses, the Levee District asserted the provisions of La. R.S. 38:213, 38:225, and 38:226.[3] In its reconventional demand, the Levee District sought reimbursement from Davie for expenses incurred by the Levee District, including but not limited to costs of continuous police monitoring of the property, excess costs incurred above and beyond the normal permitting process, and all costs related to necessary levee inspections to ensure that no damage resulted from the “illegal” actions of Davie.
A hearing on the injunction was held on March 14, 2011. • At the conclusion of the hearing, the trial court ruled from the bench, granting the Parish’s request for a mandatory injunction and ordering Davie to remove the house and trailers within twenty days of the hearing. The court also ordered Davie to obtain, prior to moving the trailers, where applicable, all appropriate permits, approvals, or letters of “no objection” from the Parish, the Levee District, and other appropriate entities. The matter was reset for a hearing on April 4, 2011, but the record does not reflect that any matters were heard on that date.
On August 15, 2011, the trial court granted the Parish’s motion to dismiss the matter against Davie, without prejudice, noting that the third-party demand between Davie and the Levee- District remained pending. Thereafter, on December 6, 2011, Davie filed an answer to the Levee District’s reconventional demand, arguing that the Levee District took it upon itself to order 24-hour police monitoring of the house and trailers without prior notice to Davie so that it could | fisecure the property itself or provide more reasonable alternatives. Davie also noted that it provided the Levee District with an engineer’s report of inspection confirming that the levee was not damaged by moving the trailers over the levee on the blacktopped road at the subject location.
On December 13, 2013, more than two years later, the Levee District moved for *928 summary judgment against Davie, seeking reimbursement for all costs and expenses it incurred made necessary by the alleged “illegal” actions of Davie. In its motion, the Levee District cited La. R.S. 38:213 as a basis for the costs and expenses, noting that in discovery, Davie admitted that it did not apply for the required permits from any Parish, State, federal, or other political subdivision or agency prior to moving the trailers over the levee to the shore of Lake Pontchartrain near the Bucktown Marina.
Davie opposed the motion for summary judgment, pointing out that in its motion, the Levee District failed to address the applicability of paragraph D of La. R.S. 38:213 to the matter. Davie asserted that paragraph D provides that this statute is not applicable to the crossing over any public levee at ramps or inclines established under the plans and specifications of the Louisiana Department of Transportation and Development (“the DOTD”). Da-vie further argued that La. R.S. 38:225 simply did not apply to the facts of this case, because the trailers were parked approximately 500 feet from the toe of the levee, considerably more than the distance of fifteen feet from the levee, the prohibited range of the statute. Davie also argued that the trailers were not an emergent threat to the integrity of the levee or the lakeshore, as evidenced by the Levee District’s insistence that Davie take the time to secure the necessary permits before moving them. Davie also noted that the Levee District’s claim for administrative fees to process the permit application was not supported by either La. R.S. 38:225 or La. R.S. 38:226.
|7In opposition to the motion for summary judgment, Davie submitted an affidavit of Warren Davie, the president of Da-vie, which noted, among other things, that the road Davie used to cross the levee was an established public crossing over the levee in accordance with the plans and specifications of the DOTD, it being a two-lane paved road built for public access to the Bucktown Marina, as well as to the United States Coast Guard Station complex, and that said road and crossing had no signs posted to indicate that any special permits were required to cross the levee at that location. Mr. Davie asserted in his affidavit that the trailer with the house weighed less than the fully-loaded garbage trucks used to empty the trash dumpster at the Coast Guard Station.[4] Mr. Davie also asserted that it was undisputed that neither the levee nor the levee road crossing sustained any damages by the actions of Davie.
On April 16, 2014, the trial court conducted a hearing on the Levee District’s motion for summary judgment and thereafter took the matter under advisement. On May 30, 2014, the trial court granted the Levee District’s motion for summary judgment, awarding the Levee District costs and expenses from Davie in the amount of $36,854.07. The trial court issued written reasons for judgment on June 13, 2014, wherein it explained that La. R.S. 38:213 required a permit in order to ride, drive, or haul upon the public levees. Finding that it was undisputed that Davie did not obtain the “required permit,” the trial court found Davie to be in violation of La. R.S. 38:213 and awarded the Levee District costs and expenses specifically pursuant to La. R.S. 38:213(B). This sus-pensive appeal followed.
*929 |s0n appeal, Davie argues that the trial court erred in its judgment because La. R.S. 38:213 does not require a construction permit or other permit to drive across the Lake Pontchartrain levee at this location. Davie asserts the crossing was made on a paved road that complies with the DOTD’s plans and specifications, as per paragraph D of La. R.S. 38:213. Alternatively, Davie also argues that it did not violate La. R.S. 38:225, which prohibits placing obstructions on or within fifteen feet of a levee, when it parked the trailers approximately 500 feet from the toe of the levee.

ANALYSIS

Appellate courts review a district court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Bourgeois v. Boomtown, LLC of Delaware, 10-553 (La.App. 5 Cir. 2/15/11), 62 So.3d 166, 169. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to-judgment as a matter of law. La. C.C.P. art. 966.
Summary judgment procedure is intended to make a just and speedy determination of every action. La. C.C.P. art. 966. It is favored and the procedure shall be construed to achieve this intention. Id. Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the non-moving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). j¿f the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Paternostro v. Wells Fargo Home Mortg., Inc., 09-469 (La.App. 5 Cir. 12/8/09), 30 So.3d 45, 49.
In this case, the facts of the matter, as related above, are not in dispute. The issue on appeal is the applicability of La. R.S. 38:213 to the facts and whether the Levee District was entitled, as a matter of law, to a judgment for costs and expenses against Davie under La. R.S. 38:213. ■
This Court could find no jurisprudence interpreting La. R.S. 38:213. Accordingly, we must interpret the statute according to the guidelines discussed previously by this Court, to-wit:
Legislation is the solemn expression of legislative will and, therefore, the interpretation of legislation is primarily the search for the legislative intent. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent. La. Civ.Code. art. 9. However, if a statute is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary.
The function of statutory interpretation and the construction to be given legislative acts rests with the judicial branch of government. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.Code art. 10. Louisiana Rev. Stat. § 1:3 also provides that, when interpreting the revised statutes, courts shall read and construe statutory words and phrases in their context and in accordance with the *930 common and approved usage of the language. See also La.Code Civ. Proc. art. 5053.
Accordingly, the starting point for the interpretation of any statute is the language of the statute itself, while being mindful that the paramount consideration for statutory interpretation is always the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. Therefore, when the apparent meaning of the statute appears doubtful or the language can reasonably be interpreted in more than one manner, courts must search deeper to discover the legislative intent.
(Internal citations omitted.)
| BellSouth Telecoms., Inc. v. Bennett Motor Express, L.L.C., 13-438 (La.App. 5 Cir. 12/12/13), 131 So.3d 236, 242-243, quoting Burnette v. Stalder, 00-2167 (La.6/29/01), 789 So.2d 573, 577.
La. R.S. 38:213 provides, in its entirety:
A.No person shall ride, drive, or haul upon the public levees or integrated coastal protection projects or their rights-of-way except where, in the judgment of the levee commissioners of a district and the Department of Transportation and Development, or, for levees or integrated coastal protection projects in the coastal area as defined in R.S. 49:214.2, the Coastal Protection and Restoration Authority, ample provision has been made to guard against any damage to which the levees or integrated coastal protection projects may thereby be exposed from wear, tear, and abuse. ■ Each levee district shall publish guidance, erect signage, and require special permits as they deem appropriate to allow them to make provisions for limited riding, driving, or hauling.
B. Each governing authority is authorized to set the penalty for violation of this Section, provided that the penalty shall not exceed the penalty for criminal trespass, as defined in R.S. 14:63, and the governing authority may seek injunctive relief and collect all expenses incurred as a result of the violation.
C. This Section shall not be construed to restrict the proper officers of the state or of any levee district or parish while in the performance of duty in inspecting, guarding, or repairing the levees or integrated coastal protection projects.
D. Nothing in this Section shall interfere with the crossing over any public levees, at ramps or inclines established under plans and specifications of the Department of Transportation and Development, or, for levees or integrated coastal protection projects in the coastal area as defined in R.S. 49:214.2, the Coastal Protection and Restoration Authority. Nothing in this Section shall interfere with the ability of the Coastal Protection and Restoration Authority Board to carry out its responsibilities as the local sponsor for all integrated coastal protection projects, in its jurisdiction, pursuant to R.S. 49:214.1(F).
(Emphasis added.)
At the outset, in paragraph A, the statute describes the prohibited actions as riding, driving, or hauling “upon” the public levees or integrated coastal protection projects or their rights-of-way. It is undisputed that Davie did not drive upon the levee itself, but rather drove across the levee on a paved road open to the public. InThis distinction is important, because *931 paragraph D of the statute provides that “[n]othing in this Section shall interfere with the crossing over any public levees, at ramps or inclines established under plans and specifications of the [DOTD], ... (Emphasis added.) Paragraph D uses the words “crossing over” as opposed to riding, driving, or hauling “upon” the levee. As such, the legislature’s specific exemption of the act of “crossing over” the levee on a DOTD specified roadway distinguishes the prohibited acts described in the first paragraph, which logically refer to acts of driving, riding, and hauling that take place upon the levee at locations other than on a DOTD specified paved road crossing thereof.
Further, paragraph A of the statute provides that “[e]aeh levee district shall publish guidance, erect signage, and require special permits as they deem appropriate to allow them to make provisions for limited riding, driving, or hauling.” It is undisputed that no signage of this sort was placed at this particular paved crossing of the levee. As such, the public was not placed on notice that a special permit was required to cross over the levee at this location, if in fact a permit to cross here was required by La. R.S. 38:213, a requirement which we find is unsupported by the record. Additionally, no evidence was presented that this road crossing was used for “limited” riding, driving, or hauling, but was in fact used for public access to the Bucktown Marina and U.S. Coast Guard Station. The record is devoid of any mention of limitations on vehicular travel over the levee at this road crossing.
It is also undisputed that Davie did not secure the permits required by Sec. 8-6-131 et seq., of the Jefferson Parish Code of Ordinances in order to move the house “over, along or across any highway, street, roadway or alley in the parish.” However, a violation of the Jefferson Parish Code of Ordinances is clearly not the basis for the Levee District’s claim against Davie. Rather, there is no evidence that |1?the Levee District followed the provisions of La. R.S. 38:213(A) to require a special permit for anyone or any particular type of vehicle to cross over the levee at this particular location, published guidance, or notified the public by the proper signage. Accordingly, as a matter of law, the trial court improperly applied La. R.S. 38:213 as a basis for its grant of summary judgment against Davie and its award of costs and expenses in favor of the Levee District.
Davie also argues on appeal that it did not violate La. R.S. 38:225. It appears from the written reasons for judgment issued on June 13, 2014 that the trial court did not find a violation of La. R.S. 38:225. Although appeals are from judgments, not reasons for judgment, such reasons are illustrative of the court’s analysis. Upon review, we find that the record does not support a finding that Davie violated La. R.S. 38:225, which prohibits obstructions on levees, waterways and rights-of-way and for the removal thereof at the expense of the person responsible.[5] The facts of *933 this case are undisputed that the trailers in question were [^parked on the shore of Lake Pontchartrain and were parked well over fifteen feet from the levee in question. Nor was it shown that the location of the trailers was on any “riparian land burdened with the levee servitude and on which a flood 114control levee or flood control structure is located.” Furthermore, the trailers were not “floating objects” subject to the restrictions in R.S. 38:225(A)(3). Other provisions of this statute clearly do not apply to the facts in this case. Accordingly, the record shows no violation of this statute.
Accordingly, upon our de novo review of the record, we find that, under the particular undisputed facts of this case, Davie’s actions were not in violation of either La. R.S. 38:213, 38:225, or 38:226, and as such, the Levee District is not entitled to costs or expenses under these statutes as a matter of law. Accordingly, we reverse the trial court’s grant of summary judgment in favor of the Levee District and its concomitant award of costs and expenses to the Levee District.

CONCLUSION

For the foregoing reasons, the trial court’s grant of summary judgment in favor of the Levee District is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

. Plaintiff-in-reconvention asserted in the trial court that it was improperly identified as the East Jefferson Levee District, when in fact it is The Board of Commissioners of the East Jefferson Levee District. For simplicity’s sake, plaintiff-in-reconvention will be referred to throughout this opinion as "the Levee District.”

. For simplicity's sake, the term "trailers” used herein will refer to the two trailers and the "Bobcat.”

. It is noted that La. R.S. 38:226 provides that the issuance of levee permits “shall be a ministerial duty of the executive or administrative officer,” and does not provide for the recovery of costs or expenses. Further, the trial court did not mention La. R.S. 38:226 in either its judgment or reasons for judgment.

. At the summary judgment hearing, counsel for the Levee District agreed with this assertion, noting, however, that the weight of the trailer with the house was not known at the time it was discovered.

. La. R.S. 38:225 provides in its entirety as follows:
A. No person shall:
(1) (a) Place or cause to be placed upon or within fifteen feet of any part of the levees fronting any waterway subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee; or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or *932 subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States’ rights-of-way, easements, or other servitudes for the construction, improvement, or maintenance of any flood-control structures or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway or use of the land for flood-control purposes.
(b) None of the provisions of this Paragraph shall apply to any structures or objects placed upon the land needed for flood control or waterway improvement or maintenance by the owner thereof, or by his lessee or licensee, or by any person, firm, or corporation with approval of the United States Corps of Engineers and the levee board or other necessary governmental authority, except that no new objects, works, or structures shall be placed upon riparian land burdened with the levee servitude and on which a flood control levee or flood control structure is located, without first obtaining a permit or letter of no objection from the levee district in which the land is located or from the appropriate governing authority where no levee district exists.
(2)(a)(i) Tie or moor logs, rafts, boats, watercraft, or floating objects of any description to the levees, or, when the water is against the levees, tie or moor any floating objects to mooring posts, revetments, trees, or other objects within one hundred eighty feet from the crown of any federally authorized and funded levees or levees designated by the Office of Coastal Protection and Restoration or the Department of Transportation and Development;
(ii) When the water is against the levees, drive or push any logs, rafts, boats, watercraft, or floating objects of any description onto or against any levees;
(b) Nothing herein shall prohibit the mooring or berthing of floating vessels at such locations as have been permitted for this purpose by the United States Coast Guard Captain of the Port, United States Army Corps of Engineers, the Louisiana Department of Transportation and Development, the jurisdictional levee district or flood protection authority, the Office of Coastal Protection and Restoration, or any other permitting authority;
(3) Portage boats, water-craft, logs, driftwood or other floating objects over the levees or dykes anywhere, under any circumstances, during the time the water is against the levees, or at any other time except at ramps or properly prepared crossings, under permits issued by the levee district for the purpose in cases where the objects are very heavy;
(4) Ply the river or other leveed waterways with any power driven vessels, during flood stages at speeds inimical to the safety and integrity of the levee system or greater than necessary for steerage purposes and "slow bell” progress;
(5) Use explosives to produce heavy detonations in exploring for so called salt domes or for any other purpose, within two miles of the levees or the banks of the rivers or leveed waterways during the time the water is actually against the levees or approaching more than bank full stage or, within one-half mile thereof during low water stages;
(6) Drill, drive, jet, or otherwise sink oil, gas, or deep water wells within two hundred fifty feet of the levees;
(7) Excavate wells, pumps, reservoirs, fish ponds, drainage canals or ditches, other than small seepage ditches, borrow pits, or pits for cesspools or privies, or for any other purpose, nearer the levee than thirty feet from its riverside toe and one hundred feet from its land side toe;
(8) Scrape or wear away the surface of the levee or its surfacing of sod by tobogganing, dip-netting, or any other form of abuse; or
(9) Break off, disturb, remove, or destroy engineers' or surveyors' marker stakes, reference points or bench marks placed oh or near the levees.
(10) Drive or otherwise sink piles within two hundred fifty feet of the levee unless he has first received a permit or a letter of no objection from the levee district.
B. If after forty-eight hours’ notice by any district commissioner, levee inspector, or authorized representative of the state, agency or subdivision thereof, the object or objects, structures or other obstructions have not been removed, said objects can be removed or the menace abated and any damage repaired by the state, its agency or subdivision at interest at the expense of the owner, agent or person responsible therefor. The objects, structures or other obstructions may be at *933 tached and may be removed from said levee or land at the risk and expense of the owners or persons responsible therefor to remove the menace to said levee or the obstacle to the improvement or maintenance of such waterway.
C. This Section shall not apply to movable property placed upon the wharves and landings in New Orleans or in any other legally constituted port areas.
D. Whoever violates this Section shall be subject to the following penalties:
(1) Not more than one hundred dollars for each violation or, in the case of willful and wanton violations, imprisonment for not more than six months, or both.
(2) (a) Within the parishes of Jefferson and Orleans, a civil fine of not more than ten thousand dollars for each violation or, in the case of willful and wanton violations, imprisonment for not more than six months, or both. Second and any subsequent violations shall be subject to a civil fine of up to twenty thousand dollars for each violation or, in the case of willful and wanton violations, imprisonment for not more than six months, or both.
(b) The provisions of this Paragraph shall remain in effect until such time as the Coastal Protection and Restoration Authority promulgates regulations that will provide levee districts, within the coastal area, as defined in R.S. 49:214.2(3), with the authority to enforce the necessary prohibitions related to Subparagraph ,(2)(a) of this Section as determined or approved by the Coastal Protection and Restoration Authority.
E. The governing authority that has jurisdiction of a levee, may bring a civil action for damages and/or injunctive relief, including but not limited to the issuance of a mandatory injunction. In any suit for the issuance of an injunction, proof of irreparable harm shall not be necessary.
F. Nothing in this Section shall interfere with the ability of the Coastal Protection and Restoration Authority to carry out its responsibilities as the local sponsor for all flood control projects, in its jurisdiction, pursuant to R.S. 49:214.1(F).