STATE OF LOUISIANA

VERSUS

HUSAM ODEH

NO. 21-KP-657

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW
FROM THE FIRST PARISH COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. F-2125202, DIVISION "B"
HONORABLE DENNIS J. WALDRON, JUDGE AD HOC PRESIDING

December 23, 2021

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
 **FHW**
 **SJW**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy J. Vega
Chief Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
    Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
HUSAM ODEH
    George G. Angelus
    Stephen H. Shapiro

**WICKER, J.,**

After a two-day bench trial, Defendant, Husam Odeh, was found guilty as charged of riding on a levee in violation of La. R.S. 38:213 and failing to obey the direction of a traffic officer in violation of La. R.S. 32:56. Immediately after finding the defendant guilty, the trial court sentenced defendant to a fine of $50.00 on each count, a total of $100.00. Defendant now seeks review of his two misdemeanor convictions and sentences. For the reasons set forth herein, we affirm defendant's convictions and sentences, and we amend the minute entry to correct the patent error to accurately reflect Mr. Odeh has a balance of $50.00 owed for the fine imposed by the trial court as to count 2 and that the $50.00 fine paid by Mr. Odeh on May 26, 2021 applies to count 1.

## PROCEDURAL HISTORY

On October 29, 2018, the District Attorney for First Parish Court in Jefferson Parish filed a bill of information charging defendant, Husam Odeh, with riding on a levee in violation of La. R.S. 38:213 and failing to obey the direction of a traffic officer in violation of La. R.S. 32:56.1 At the January 14, 2019 arraignment, defendant pled not guilty.

On November 15, 2019, Mr. Odeh filed a Motion to Quash regarding La. R.S. 38:213. In his motion, Mr. Odeh argued that the charge of violating La. R.S. 38:213 must be quashed since the charge was not relevant or material to the facts alleged in the bill of information considering there were no allegations that he was riding, driving, or hauling a vehicle upon the public levee.

At the October 14, 2003 hearing, the trial court denied the motion. A two-day bench trial occurred on May 24, 2021 and May 26, 2021. Defendant was found guilty as charged and sentenced to a fine of $50.00 on each count, a total of $100.00. Thereafter, on June 23, 2021, defendant filed an application for writ of review requesting this Court to exercise its supervisory jurisdiction regarding his convictions and sentences.

## FACTS

This case arises from an incident that occurred on October 18, 2018, on the levee located at North Arnoult and River Road on the East Bank of Jefferson Parish. A cross-country track meet was being held in the levee batture (the river side of the levee) for several local participating elementary schools. The race was scheduled to begin at 8:00 a.m., and generally, the duration of the event was about 30 minutes.

Because he was running late for the event, Mr. Odeh parked his vehicle on the levee to drop off his 11-year-old son who was participating in the race. Once he was parked, Mr. Odeh's son exited the vehicle to join the other participants of the race. Two additional unoccupied vehicles were also parked on the levee. Mr. Odeh remained in the vehicle, and was planning to exit the vehicle to observe and take photographs of his son at the race. Prior to Mr. Odeh exiting his vehicle, Lieutenant Kirt Arnold used the speaker of the public address (PA) system attached to his patrol vehicle to alert and inform Mr. Odeh that parking on the levee was prohibited and that he must move his vehicle immediately.

At trial, Lieutenant Arnold[1] testified that after the first announcement, he made two additional announcements for Mr. Odeh to move his vehicle. Mr. Odeh did not respond to Lieutenant Arnold's directives. For that reason, Lieutenant Arnold pulled his patrol vehicle next to the driver-side window of Mr. Odeh's vehicle and instructed Mr. Odeh to roll down his window. At that point, Lieutenant Arnold again told Mr. Oden that individuals were not permitted to park their vehicles on the levee, and that Mr. Odeh had to move his vehicle. In response, Mr. Odeh told Lieutenant Arnold that he was a parent of one of the race participants and that he was going to take pictures. Mr. Odeh believed that vehicles were permitted to park on the levee for the limited purpose of the race. Again, Lieutenant Arnold explained to Mr. Odeh

---

[1] For eleven years, Lieutenant Arnold has been employed by the East Jefferson Levee District Police Department, and assigned to patrol River Road on the Eastbank of Jefferson Parish. He supervises a platoon of over four men, and works the 5:00 a.m. to 5:00 p.m. shift.

that he had to move his vehicle and parking was not permitted on the levee. Mr. Odeh did not at first move his vehicle after Lieutenant Arnold instructed him to do so.

Lieutenant Arnold further testified that eventually Mr. Odeh moved his vehicle and parked about 20 feet from his original parking place, and thus, remained parked on the levee. Ten minutes passed from the time Lieutenant Arnold first instructed Mr. Odeh to move his vehicle from the first location until the time Mr. Odeh moved his vehicle and parked at the second location on the levee.

After parking in the second location on the levee, Mr. Odeh exited his vehicle and proceeded to the race. Lieutenant Arnold again informed Mr. Odeh that he could not park on the levee and to move his vehicle. Since Mr. Odeh refused to move his vehicle, Lieutenant Arnold dispatched Officer Michael Rosenbohm, Officer Scott Menieur, and Lieutenant Tyron Butler to assist him. Upon Officer Rosenbohm's arrival to the scene, Mr. Odeh proceeded to return to his vehicle. At the same time, Officer Menieur and Lieutenant Butler arrived on the scene. Lieutenant Butler, who was Lieutenant Arnold's supervisor, took over the scene and interactions with Mr. Odeh. In the meantime, Lieutenant Arnold went to Officer Rosenbohm's patrol vehicle to use the computer system to perform a background search of Mr. Odeh's license plate, and the results of the search revealed that Mr. Odeh had a concealed carry license which prompted Lieutenant Arnold to inform Officer Menieur regarding the possibility that Mr. Odeh had a weapon.

Lieutenant Arnold recounted speaking with a woman who informed him that she heard his announcement regarding parking on the levee being barred, she owned one of the other two vehicles parked on the levee, and her husband was going to move her vehicle. Lieutenant Arnold testified that Mr. Odeh was given citations by Lieutenant Butler after Mr. Odeh moved his vehicle to a third location which was to

3

the side of the road and off of the levee system. He explained that Mr. Odeh would not have been cited if he had moved his vehicle as initially requested.

Lieutenant Arnold pointed out that when this incident occurred there was a sign next to the access road that reads: "Motorized Vehicles Prohibited La. R.S. 38:213," which Lieutenant Arnold recalled was the Louisiana statute that prohibits riding and hauling on the levee. He further explained that La. R.S. 38:213 was a moving violation that can be issued by the officer who observes it or by anybody on the scene. He maintained that he was going to arrest defendant for disobedience but did not do so because defendant's son was present. Lieutenant Arnold recalled that Mr. Odeh had a "serious attitude," raised his voice, and his hands were "flying" while Mr. Odeh was interacting with the officers. Lieutenant Arnold testified that after Mr. Odeh received his citation, Mr. Odeh told Lieutenant Butler that he made more money in a month than Lieutenant Butler made in a year, after which defendant laughed and then left the scene. Lieutenant Arnold stated that the total interaction with Mr. Odeh lasted approximately forty to fifty minutes.

At trial, Lieutenant Butler[2] testified that on the day of the incident at issue he was working a detail with the levee police for an elementary school race. Prior to being dispatched by Lieutenant Arnold, he was located on the unprotected side of the levee which is parallel to the river. Lieutenant Butler explained that he was dispatched by Lieutenant Arnold on the date in question regarding a parent who refused to move his parked vehicle off of the levee. He recalled confirming that he was able to observe Lieutenant Arnold and Mr. Odeh at the top of the levee from his current location. Upon arrival to the scene, Lieutenant Butler requested that Mr. Odeh, who was standing at the top of the levee system, move his vehicle but Mr.

---

[2] Since 2006, Lieutenant Butler has been employed with the East Jefferson Levee District Police Department. Prior to his employment with the levee district, he was employed with the New Orleans Police Department. Lieutenant Butler has been in law enforcement for approximately twenty years.

4

Odeh did not respond to his directives. Instead, Mr. Odeh continued to gaze at the children on the grassy area.

Lieutenant Butler testified that once Mr. Odeh did not reply to his second request to move his vehicle, he instructed Officer Rosenbohm to get his ticket book so Lieutenant Butler could write a citation which was in fact issued. As Lieutenant Butler proceeded to walk towards Mr. Odeh's parked vehicle to issue the citation, Mr. Odeh replied, "Do not f**k with my vehicle. I have a gun in there." Lieutenant Butler recalled that he asked Mr. Odeh if he was threatening him and that Mr. Odeh replied, "I'm just telling you don't f**k with my vehicle. I have a gun in there." Lieutenant Butler maintains that he asked Lieutenant Arnold to accompany him since Mr. Odeh stated he had a gun in his vehicle. Mr. Odeh then returned to his vehicle, started it, but did not move it. Mr. Odeh started recording the interaction with his cell phone. Mr. Odeh refused to move his vehicle and continued to record the incident.

Lieutenant Butler testified that he tried to get Mr. Odeh to cooperate several times for approximately fifteen to twenty minutes. He explained that he asked Mr. Odeh three or four times to move his vehicle before writing the ticket and that Lieutenant Arnold had also asked him to move his vehicle several times prior to Lieutenant Butler's involvement in the incident. Lieutenant Butler described Mr. Odeh's demeanor throughout the incident as "total disrespect." He explained that during his interactions with Mr. Odeh, the race had not started, and that in general, the levee police does not tolerate illegal parking during the races. Lieutenant Butler recalled that Mr. Odeh moved his vehicle approximately fifteen to twenty minutes later. He maintained that if Mr. Odeh had simply moved his vehicle as requested, a citation would not have been issued and Mr. Odeh would not have missed the race.

At trial, Lieutenant Butler confirmed that he provided a statement to Internal Affairs about the incident. On cross-examination, Lieutenant Butler reviewed his

statement and confirmed that he had stated the following to Mr. Odeh: "I don't know how you treat police in the country you come from. However, the police are treated with respect in this country." Lieutenant Butler denied that the comment was racist. He explained that the sole reason for issuing the citation was due to Mr. Odeh's vehicle being illegally driven on the levee. He recalled that because Mr. Odeh sped off from the second location where he had parked his vehicle, Lieutenant Butler then drove to the third location at which Mr. Odeh had parked his vehicle to issue the citation.

At trial, Officer Michael Rosenbohm[3] testified that on October 20, 2018, his supervisor Lieutenant Arnold called him for backup regarding a parent refusing to move his vehicle that was parked on the levee. He stated that he requested that Mr. Odeh move his vehicle, but received a negative reply from Mr. Odeh, which prompted him to allow Lieutenant Arnold to handle the incident. Officer Rosenbohm described the incident as continuously escalating with a lot of children and parents around to witness it. He recalled that they were trying to get Mr. Odeh to move his vehicle. Officer Rosenbohm testified that he observed the vehicle at location one when Lieutenant Arnold called him over, and at location two after Mr. Odeh had moved his vehicle.

Officer Scott Menieur[4] also testified at trial. He recalled on October 20, 2018, being dispatched to provide backup assistance by Lieutenant Arnold who informed him that assistance was needed for an individual who was acting "somewhat irate." Once he arrived to the scene of the incident, Officer Menieur observed police units on the levee along with Mr. Odeh's vehicle. He tried to assist with de-escalating the situation and calming Mr. Odeh down. Officer Menieur reported that he observed Lieutenant Butler and Mr. Odeh speaking to each other in a loud, angry fashion. He

---

[3] Since 2005, Officer Rosenbohm has been employed as a patrol officer with East Jefferson Levee Police Department.
[4] For the past three years, Officer Menieur has been employed with East Jefferson Levee District Police Department.

recalled Lieutenant Arnold informed him that Mr. Odeh had a firearm in his vehicle, and that Lieutenant Arnold requested that he search Mr. Odeh's license plate through a database to discern whether he had a concealed handgun permit. Officer Menieur recalled Mr. Odeh moved his vehicle off of the levee and onto the side of the road. Thereafter, he recalled Lieutenant Butler issued a citation to Mr. Odeh, who appeared to be upset.

Zachary Bordelon, the cross-country track coach employed by Arden Cahill School, testified that Mr. Odeh's son was on the track team for the race. He explained that on October 20, 2018, fourteen to fifteen schools with 289 runners, both boys and girls, participated in a race at the levee batture. Mr. Bordelon maintained that parents would drive their children to the race, and that many observers of the race would be seated in chairs on top of the levee. He further explained that the children would run at the bottom of the levee, about three quarters of a mile down, turn around, and run three quarters of a mile back. The girls' race started at 7:30 a.m. and the boys' race started at 8:00 a.m. Mr. Bordelon reported that the track event was sanctioned by the school board and parish authorities and that levee police assisted with crowd control along the levee. Mr. Bordelon testified that there were various stretches along the levee for parking and that sometimes vehicles parked alongside the levee. He recounted that the police were tolerant of illegal parking that occurs during these events. No parents or anyone else, other than Mr. Odeh, had informed him that they had received a parking ticket at that event. Mr. Bordelon pointed out that a medal ceremony occurred after the race, which the parents attended.

When the incident occurred, Mr. Bordelon testified that he was coaching on top of the levee facing towards the river and the street. While primarily focused on the race, Mr. Bordelon explained that he observed when Mr. Odeh drove up to the levee and that other vehicles were parked in the vicinity of his vehicle. Although he

7

could not hear the conversations, Mr. Bordelon did observe the interactions between Mr. Odeh and the police officers when Mr. Odeh had parked in the third location. He stated Mr. Odeh appeared to be detained by the police, and that while his son was still in the race, Mr. Odeh was told to move his vehicle. He further testified that Mr. Odeh's vehicle was on the levee, and that he did not see any interactions that occurred on the levee.

Mr. Odeh also testified at trial. He stated that he was a United States citizen but originally from Palestine. Regarding the incident at issue, Mr. Odeh confirmed that he was driving his son to the race on the levee. He reported that he arrived at the levee at 7:54 a.m. Mr. Odeh explained that there was parking available "before the stables" but it was full, and vehicles were parked everywhere. He dropped his son off and then proceeded to find a place to park. Mr. Odeh reported that he saw other cars parked on the grassy area of the levee, which led him to believe it was a good place to park. Initially, he did not recall seeing any signs that prohibited parking or riding on the levee. However, sometime thereafter, he noticed a sign, but it was hidden by vegetation.

Mr. Odeh testified that he parked, took his phone out, exited his vehicle, and removed his folding chair and backpack from his vehicle. He recalled Lieutenant Arnold announced on the PA system that no parking was permitted on the levee. In response, Mr. Odeh shouted to Lieutenant Arnold that he would be back in 2 minutes after he took a picture of the race. Mr. Odeh confirmed that Lieutenant Arnold repeated that no parking was allowed, and at this point, Mr. Odeh reported that he entered his vehicle and started it. Lieutenant Arnold had already driven up to Mr. Odeh's driver-side window, and informed him that parking on the levee was prohibited and to move his vehicle "now."

In an effort to comply with Lieutenant Arnold's directives, Mr. Odeh reported that he moved his vehicle twenty to thirty feet away to location two. Since other

8

vehicles were parked in the area, Mr. Odeh explained that he was under the impression that he was properly parked at location two. Mr. Odeh testified that he did not know where the levee ended. After he parked, Mr. Odeh exited his vehicle, and heard the race gun had been fired which signaled the start of the race. Mr. Odeh immediately ran up to the top of the levee and told an officer that he was going to take a picture and come right back down. The officer did not respond to Mr. Odeh's statement. For that reason, Mr. Odeh testified that he took three or four photographs of the race, and that after doing so, he observed two police cars facing his vehicle, which he stated made him uncomfortable.

Mr. Odeh further testified that he walked from the top of the levee to his vehicle, entered it, started it, and put it in drive. He recalled Lieutenant Butler appeared behind him "yelling and screaming. Give him a ticket now." Mr. Odeh stated that Lieutenant Arnold and Lieutenant Butler were both present when he parked at location two, but Lieutenant Arnold did not talk to him after leaving location one. He described Lieutenant Butler as angry, and that Lieutenant Butler abruptly opened his vehicle door. Mr. Odeh recalled that Lieutenant Butler was talking and shouting most of the time and uttered, "I don't know what country you come from, but that's not how we do it around here." He also testified that Lieutenant Butler called him "stupid" a couple of times and commented that he was "sick of you people."

In an effort to explain his actions, Mr. Odeh testified that he tried to explain the situation to Lieutenant Butler but denied yelling, cursing, or name calling. Mr. Odeh reported that he asked Lieutenant Butler to close the door to his vehicle, and Lieutenant Butler responded by commenting that he did not want to see him around here anymore and slammed his door. At this point, Mr. Odeh stated that he understood he needed to leave. At trial, Mr. Odeh denied being asked for his license, registration, and proof of insurance. He recalled informing the officers that he had a

9

gun in his vehicle but did not threaten any of them with it. Afterwards, Mr. Odeh reported that he left location two in a safe manner.

Thereafter, Mr. Odeh recalled that Officer Menieur moved in between him and Lieutenant Butler. After explaining that he needed to issue a citation, Officer Menieur then requested Mr. Odeh's license and insurance information, and that failure to provide him with the information would result in Mr. Odeh going to jail. Officer Menieur also asked Mr. Odeh if there was a weapon in his vehicle and Mr. Odeh responded affirmatively. Officer Menieur removed Mr. Odeh's weapon from his vehicle and later returned it. Lieutenant Butler issued two tickets at location three and then asked Mr. Odeh to leave the area. After leaving the scene, Mr. Odeh testified that he picked up his son.

At trial, Mr. Odeh confirmed that he videotaped part of the incident with his cell phone. Mr. Odeh further admitted that he was very angry during the incident and that he called Lieutenant Butler an "idiot" and "a\*\*hole." He explained that he was more comfortable when Officer Menieur arrived to the scene and that Officer Menieur spoke to him in a "calm, positive way."

After considering the evidence and hearing arguments of counsel, the trial judge found defendant guilty as charged.

## ASSIGNMENTS OF ERROR

In his application for writ of review, Mr. Odeh sets forth the following assignments of error:

1. The trial court erred in denying Odeh's re-urged Motion to Quash the alleged violation of La. R.S. 38:213 after trial, when all the material facts missing at the initial Motion to Quash hearing were later developed at trial, and which facts conclusively proved defendant's violation was merely a non-moving, parking violation that the statute clearly does not encompass.

2. The State failed to prove beyond a reasonable doubt that defendant was guilty of violating La. R.S. 38:213 because there was no evidence to prove defendant was riding, hauling, or driving upon the levee as proscribed by the statute.

3. The State failed to prove beyond a reasonable doubt that defendant was guilty of violating La. R.S. 32:56 because: (1) the police order to remove the parked vehicle from the levee was admittedly complied with in a delayed fashion; (2) the police order to remove his vehicle from the levee was given in an arbitrary and discriminatory fashion under the circumstances; (3) the disobedience citation was issued by a levee police officer who had accosted defendant racially, fabricated evidence in his Internal Affairs statement to investigators, and was not present when the order to move the vehicle was given by the ordering officer; and (4) the officer who issued the order, in his sole discretion, chose not to issue any citations at all.

## LAW AND ANALYSIS

In his first assignment of error, Mr. Odeh contends that the trial court erred by denying his re-urged Motion to Quash the alleged violation of La. R.S. 38:213 after trial. Seven months prior to trial, the trial court denied his motion to quash on the basis that it was a procedural device available to raise pre-trial defenses that do not go to the merits of the charge and that the only question at that time was whether the bill of information charged a valid offense. Now, Mr. Odeh asserts that during the two-day trial, the missing facts were developed and proved that he was not riding, driving, or hauling upon the levee. Specifically, Mr. Odeh argues that La. R.S. 38:213 does not encompass parking on the levee and makes no mention of the word "parking" in its text. He further argues that the applicable law on statutory interpretation and the long-standing jurisprudential law are both plentiful and quite clear. Mr. Odeh maintains that the articles of the Louisiana Code of Criminal Procedure cannot be extended by analogy to create crimes not provided for. He

11

contends that the officers' explanation, that any parking maneuver made on the levee naturally encompasses driving on the levee, is a strained and arbitrary interpretation that is prohibited by the law and jurisprudence. Mr. Odeh points out that Lieutenant Arnold only observed a parked vehicle initially and that the ticket was not issued by him but by Lieutenant Butler, who saw no movement on the levee at all. He contends that his motion to quash was re-urged and should have been granted by law after the trial court heard all of the factual evidence.

A motion to quash is a mechanism by which to raise pre-trial pleas or defenses, or those matters which do not go to the merits of the charge. *State v. Arceneaux*, 13-953 (La. App. 5 Cir. 4/23/14) (unpublished); citing *State v. Boudreaux*, 99–1017 (La. App. 5 Cir. 2/16/00); 756 So.2d 505, 507. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and determine, as a matter of law and from the face of the pleadings, whether a crime has been charged. *Id*; citing *State v. Byrd*, 96–2302 (La.3/13/98); 708 So.2d 401, 411, *cert. denied sub nom. Peltier v. Louisiana*, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998).

At a hearing on a motion to quash, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. *Id*; *Boudreaux*, supra. When the issue presented in a motion to quash is exclusively a question of law, appellate courts review the ruling de novo. *Id*; citing *State v. Hamdan*, 12–1986 (La.3/19/13); 112 So.3d 812, 816. Generally, the trial judge's denial of a motion to quash should not be reversed in the absence of a clear abuse of the trial court's discretion. *State v. Lommasson*, 11-536 (La. App. 5 Cir. 11/29/11), 81 So.3d 796, 799.

A review of the trial transcript reveals that Mr. Odeh did not re-urge his motion to quash after the trial. In fact, the record shows instead that Mr. Odeh orally moved for an acquittal following the State's case-in-chief during which he merely

12

referenced his previously filed motion to quash. Notwithstanding Mr. Odeh's failure to re-urge his motion to quash after trial, the record further reveals that Mr. Odeh did not give notice to the Court of his intent to seek this Court's supervisory review of the trial court's ruling denying his motion to quash. Thus, this assignment of error has not been properly preserved for review by this Court.

Additionally, we point out that Mr. Odeh has not briefed the issue of the trial court denying his request for an acquittal. However, to the extent that Mr. Odeh is arguing that the trial court erred in denying the motion for acquittal, we acknowledge that the issue of whether there was sufficient evidence to uphold the convictions will be addressed in the remaining assignments of error.

In his second assignment of error, Mr. Odeh avers that there was insufficient evidence pursuant to the *Jackson* standard to support his conviction of riding, hauling, or driving upon the levee in violation of La. R.S. 38:213. He further argues that: (1) the officers testified that his violation was a parking violation; (2) no evidence was presented at trial to support that he was riding, hauling, or driving on the levee; (3) none of the officers, except Lieutenant Arnold, observed his vehicle at location one; and (4) none of the officers observed any vehicle movement except the non-levee movement from location two to location three, which was made at the officers' insistence.

The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *State v. Harrell,* 01–841 (La. App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. Circumstantial evidence is evidence of facts or circumstances from which one might infer or

13

conclude, according to reason and common experience, the existence of other connected facts. *State v. Kempton*, 01–572 (La. App. 5 Cir. 12/12/01), 806 So.2d 718, 722. Pursuant to La. R.S. 15:438, assuming every fact to be proven that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. However, this requirement does not establish a standard that is separate from the *Jackson* standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. *State v. Lathers*, 03–941 (La. App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. *Id*.

Here, the State presented its case at trial through the testimony of Lieutenant Kirt Arnold, Lieutenant Tyron Butler, Officer Michael Rosenbohm, and Officer Scott Menieur. The witnesses' testimony regarding the October 20, 2018 incident were substantially similar. The State presented evidence to show that Mr. Odeh violated La. R.S. 38:213 by operating his motor vehicle on the levee. At trial, Lieutenant Arnold testified that next to the access road on the levee was a posted sign visible to motorist that stated "Motorized Vehicles Prohibited La. R.S. 38:213." Further, Lieutenant Arnold explained that while he did not observe Mr. Odeh in the act of riding on the levee, in order to park on the levee as Mr. Odeh had successfully done, he had to ride on the levee to get to the location where his vehicle was parked. Moreover, Mr. Odeh testified at trial that he had in fact driven his son to the race, and that he had observed other vehicles parked on the grassy area of the levee, which he believed was an area where parking was permissible. Mr. Odeh did not deny that he was riding on the levee. Instead, he testified that he did not notice the sign instructing motorists that no riding on the levee was permitted until sometime after he encountered the officers.

Further, we find that *Parish of Jefferson v. Davie Shoring, Inc.*, 14-701 (La. App. 5 Cir. 2/11/15), 167 So.3d 925, is instructive regarding the interpretation of La. R.S. 38:213, which provides, in pertinent part:

> A. No person shall ride, drive, or haul upon the public levees or integrated coastal protection projects or their rights-of-way except where, in the judgment of the levee commissioners of a district and the Department of Transportation and Development, or, for levees or integrated coastal protection projects in the coastal area as defined in R.S. 49:214.2, the Coastal Protection and Restoration Authority, ample provision has been made to guard against any damage to which the levees or integrated coastal protection projects may thereby be exposed from wear, tear, and abuse. Each levee district shall publish guidance, erect signage, and require special permits as they deem appropriate to allow them to make provisions for limited riding, driving, or hauling.

In *Davie*, this Court found that in paragraph A, the statute described the prohibited actions as riding, driving, or hauling "upon" the public levees or integrated coastal protection projects or their rights-of-way. This Court stated that it was undisputed that defendant did not drive upon the levee itself but rather drove across the levee on a paved road open to the public. This Court found this distinction was important, because paragraph D of the statute provided that "[n]othing in this Section shall interfere with the crossing over any public levees, at ramps or inclines established under plans and specifications of the [DOTD], ...". This Court noted that Paragraph D used the words "crossing over" as opposed to riding, driving, or hauling "upon" the levee. As such, this Court found that the legislature's specific exemption of the act of "crossing over" the levee on a DOTD specified roadway distinguished that act from the prohibited acts described in the first paragraph, which logically referred to acts of driving, riding, and hauling that take place upon the levee at locations other than on a DOTD specified paved road crossing thereof. *Davie*, 925 So.3d at 930-31.

15

Further, this Court in *Davie* asserted that paragraph A of the statute provided that "[e]ach levee district shall publish guidance, erect signage, and require special permits as they deem appropriate to allow them to make provisions for limited riding, driving, or hauling." This Court found that it was undisputed that no signage of this sort was placed at this particular paved crossing of the levee. As such, this Court further found that the public was not placed on notice that a special permit was required to cross over the levee at that location, if in fact a permit to cross here was required by La. R.S. 38:213, a requirement which it found unsupported by the record. Additionally, this Court found that no evidence was presented that that road crossing was used for "limited" riding, driving, or hauling but was in fact used for public access to the Bucktown Marina and U.S. Coast Guard Station. This Court stated that the record was devoid of any mention of limitations on vehicular travel over the levee at this road crossing. Accordingly, this Court ultimately found that defendant's actions were not in violation of La. R.S. 38:213, among other things. Thus, this Court reversed the trial court's granting of summary judgment in favor of the Levee District and remanded this matter to the trial court for further proceedings. *Davie*, 925 So.3d at 931-33.

Unlike the defendant in *Davie*, in this instance, based on the evidence adduced at trial, Mr. Odeh did not drive across the levee on a paved road open to the public. Instead, he drove upon the levee to find parking so he could observe the race his son was participating in on the levee. While no signage had been erected on the road that the defendant in *Davie* drove across, here, the access road to the levee had a sign erected to notify motorists that riding or driving upon the levee was prohibited. Mr. Odeh admitted that there was signage erected although he stated he did not notice the signage initially. In its oral reasons for finding Mr. Odeh guilty as charged, the trial court explained that in all likelihood, Mr. Odeh was running late because he testified that he arrived at 7:54 a.m., approximately 6 minutes before the race was

16

scheduled to begin. We further point out that Mr. Bordelon, the cross-country track coach for Arden Cahill, testified that fourteen to fifteen elementary schools participated in the race, and that there were 289 runners. Mr. Odeh testified that he dropped his son off so he could most likely check-in with his coach and join the other runners present from his school. Additionally, the trial court reasoned that Mr. Odeh acknowledged that he was unable to find any parking, and in an effort not to disappoint his son, he quickly drove up the levee and parked where the two other vehicles had illegally parked.

In its oral reasons for finding Mr. Odeh guilty, the trial court further pointed out that the only circumstantial evidence presented at trial pertained to Mr. Odeh having driven on the levee rather than being parked on the levee. It reasoned that "a reasonable person could find that any and all other reasonable explanations or hypothesis of innocence, is excluded." We agree. The trial court explained that through Mr. Odeh's testimony it had become apparent "officially and directly, who drove the vehicle where it was first spotted by the police." It further stated that even if Mr. Odeh had not testified at trial, "it's only reasonable that someone could say, that vehicle had to be driven from the roadway to get to where it was first spotted up on the levee."

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; and the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Accordingly, considering the foregoing, we find the State presented sufficient evidence under the *Jackson* standard for the trial court to conclude that Mr. Odeh was guilty beyond a reasonable doubt of riding or driving on a levee in violation of La. R.S. 38:213.

In his final assignment of error, Mr. Odeh contends that the evidence presented at trial was insufficient to support his conviction of failing to obey the

17

direction of a traffic officer in violation of La. R.S. 32:56. Specifically, he asserts that the State failed to prove beyond a reasonable doubt that he was guilty of violating La. R.S. 32:56 because: (1) the police order to remove the parked vehicle from the levee was admittedly complied with in a delayed fashion; (2) the police order to remove his vehicle from the levee was given in an arbitrary and discriminatory fashion under the circumstances; (3) the disobedience citation was issued by a levee police officer who had just accosted defendant racially, fabricated evidence in his Internal Affairs statement to investigators, was not present when the order to move the vehicle was given by the ordering officer; and (4) the officer who issued the order, in his sole discretion, chose not to issue any citations at all.

La. R.S. 32:56 provides in pertinent part:

> A. No person shall fail or refuse to comply with any lawful order or direction of any police officer or weights and standards police officer invested by law with authority to direct, control, or regulate traffic.

This statute imposes a duty upon a motor vehicle operator to comply with any lawful order or directive of any police officer invested by law with the authority to direct, control or regulate traffic, irrespective of the instructions or signals of a traffic control device. *Theriot v. Bergeron*, 05-1225 (La. App. 1 Cir. 6/21/06), 939 So.2d 379, 380 (internal citations omitted).

In the case at bar, the trial transcript is replete with testimony that Mr. Odeh was given several directives from the officers that parking on the levee was not permitted and that Mr. Odeh had to move his vehicle. Further, through his own admission, Mr. Odeh acknowledges that he was told repeatedly by the officers to move his vehicle because parking on the levee was prohibited.

Regarding Mr. Odeh's contention that the State failed to prove beyond a reasonable doubt that he was guilty of violating La. R.S. 32:56 because the police order to remove the parked vehicle from the levee was admittedly complied with in a delayed fashion, we find it is without merit.

18

La. R.S. 32:56 is clear that no person may fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic. Mr. Odeh admits that he delayed in complying with the directives of the officers to move his vehicle. He cites reasons for his delayed compliance, however, the statute is clear that Mr. Odeh was required to immediately comply with the orders given to him without delay.

In *State v. Carter*, 95-703 (La. App. 3 Cir. 9/12/95), 663 So.2d 152, 153, the Third Circuit reversed the trial court's ruling granting a motion to suppress based on a lack of defendant's consent to search the vehicle because defendant's driving conduct during flight from the deputy provided deputy with probable cause to arrest defendant. In *Carter*, the court found that the deputy attempted to pull over defendant's vehicle for a lack of license plate, but defendant fled, ran a stop sign, and did not stop until he pulled into private driveway. It explained that even though the defendant eventually stopped, at the time the defendant pulled into the private driveway, the deputy had probable cause to arrest the relator for a violation of La. R.S. 32:56, failure to obey a police officer.

Here, just like the defendant in *Carter*, Mr. Odeh did eventually obey the officers' request to move his vehicle. However, his failure to promptly comply with the officers' orders was proven beyond a reasonable doubt. At trial, Lieutenant Arnold testified that Mr. Odeh moved his vehicle ten minutes after the order to move was initially given. He further testified that Mr. Odeh moved his vehicle from location two to location three after ten additional minutes had passed. Lieutenant Arnold stated that the entire interaction with Mr. Odeh lasted approximately forty to fifty minutes.

Mr. Odeh also asserts that the State failed to prove beyond a reasonable doubt that he was guilty of violating La. R.S. 32:56 because the disobedience citation was issued by a levee police officer who had just accosted him racially, fabricated

19

evidence in his Internal Affairs statement to investigators, and was not present when the order to move the vehicle was given by the ordering officer. He further argues that the State failed to prove beyond a reasonable doubt that he was guilty of violating La. R.S. 32:56 because the officer who issued the order, in his sole discretion, chose not to issue any citations at all. We find no merit to Mr. Odeh's assertions.

At trial, Lieutenant Butler admitted that he stated, "I don't know how you treat the police in the country you come from, however, the police are treated with respect in this country." Lieutenant Butler denied that the comment was racial. Also, a review of Lieutenant Butler's Internal Affairs statement reflects that it is similar to his trial testimony. No evidence was presented at trial that Lieutenant Butler has a history or pattern of bias or racially motivated behavior towards persons from Palestine. Also, no evidence was presented at trial by Mr. Odeh that Lieutenant Butler fabricated evidence in his Internal Affairs statement to investigators. Mere conjecture is insufficient to challenge if an element of a crime has been met.

As to Mr. Odeh's contentions regarding issuance of the citation, a review of the record reveals that at trial Lieutenant Arnold explained that La. R.S. 38:213 was a moving violation and that tickets for such violations could be issued by the officer who saw it or by any other officer on the scene. He further testified that Lieutenant Butler was his supervisor, who agreed to take over the scene and believed that Mr. Odeh would comply if his supervisor spoke with him.

Considering the evidence presented at trial, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support the conviction of failing to obey the direction of traffic officers in violation of La. R.S. 32:56.

**ERROR PATENT REVIEW**

20

Finally, as is our customary practice, we have reviewed the record for errors patent, pursuant to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). Our review reveals the following errors patent that require correction.

According to the sentencing transcript, the trial court imposed a $50.00 fine on each count, for a total of $100.00. However, the minute entry on the docket master attached to the writ application reflects that the fine was $50.00. The docket master does not indicate which count or counts that fine was associated with. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732 (La.1983).

The record reflects that Mr. Odeh paid a $50.00 fine on May 26, 2021, the day he was convicted and was sentenced, and that his remaining balance was zero. Nevertheless, it is unknown which sentence, if either, was satisfied. It does not appear that the record before this Court adequately shows that both fines were paid. Thus, we hereby amend the minute entry to accurately reflect that Mr. Odeh has a balance of $50.00 owed for the fine imposed by the trial court as to count 2. We further amend the minute entry to reflect that the $50.00 fine paid by Mr. Odeh on May 26, 2021 applies to count 1, which was imposed by the trial court during sentencing.

## CONCLUSION

In conclusion, we find no merit in defendant's arguments in the writ of review application. Mr. Odeh's convictions and sentences are hereby affirmed, and we amend the minute entry to accurately reflect Mr. Odeh has a balance of $50.00 owed for the fine imposed by the trial court as to count 2 and that the $50.00 fine paid by Mr. Odeh on May 26, 2021, applies to count 1.

**AFFIRMED**

21

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 23, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 21-KP-657

**E-NOTIFIED**

FIRST PARISH COURT (CLERK)
HONORABLE JOHN J. LEE, JR. (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)          STEPHEN H. SHAPIRO (RELATOR)

**MAILED**

HONORABLE DENNIS J. WALDRON          GEORGE G. ANGELUS (RELATOR)
(DISTRICT JUDGE)                     ATTORNEY AT LAW
40TH JUDICIAL DISTRICT COURT         700 CAMP STREET
POST OFFICE BOX 280                  NEW ORLEANS, LA 70130
EDGARD, LA 70049